# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

KIERA ROYAL,

    Plaintiff,

v.

CEC ENTERTAINMENT, INC.,

    Defendant.

CIVIL ACTION NO.: 4:18-cv-302

## **O R D E R**

Presently before the Court is Defendant CEC Entertainment, Inc.'s Motion to Dismiss and to Compel Arbitration. (Doc. 4.) Plaintiff Kiera Royal, proceeding *pro se*, filed a Response in opposition, (doc. 10), Defendant filed a Reply, (doc. 12), and Plaintiff filed a Sur Reply, (doc. 13). For the reasons set forth herein, the Court **GRANTS** Defendant's Motion to Dismiss, (doc. 4), and **DISMISSES without prejudice** Plaintiff's Complaint. The Court **DIRECTS** the Clerk of Court to enter an appropriate judgment of dismissal and to **CLOSE** this case.

## BACKGROUND

This action arises out of an employment dispute between Plaintiff Kiera Royal and her employer, Defendant CEC Entertainment, Inc. (Doc. 1-1). Defendant does business through the operation of Chuck E. Cheese restaurants throughout the United States. (Doc. 4-1, p. 2.) Plaintiff was hired to work at Defendant's restaurant in Savannah, Georgia on January 5, 2015. (Doc. 1-1, p. 3.) As a part of Defendant's new-hire process, Plaintiff was required to review and sign various documents. (Doc. 4-1, p. 3.) One of these documents was a "Mutual Agreement to Arbitrate Claims" (hereinafter the "Arbitration Agreement" or "Agreement") wherein the parties agreed "to

use final and binding arbitration to resolve any and all 'Covered Disputes' as defined in [the document]" and that such disputes "shall be decided by a neutral arbitrator and not by way of court or jury trial." (Doc. 4-2, p. 6.) The Agreement provides that "Covered Disputes shall include, without limitation, all claims arising out of . . . employment with [Defendant]," such as "[c]laims for retaliation" and "[c]laims for harassment or discrimination on the basis of, without limitation, race, sex, . . . or any other characteristic protected by law." (Id.) However, administrative charges filed with agencies such as the Equal Employment Opportunity Commission ("EEOC") are not considered "Covered Disputes" and are not subject to mandatory arbitration. (Id. at p. 7.) The Agreement also states that a signature indicates a party's understanding that they have given up "the right to resolve a Covered Dispute in court," and that Defendant will pay "the fees and costs of the Arbitrator;" however, the signing party is responsible for paying "an administrative fee in an amount that will not exceed the fee that [he or she] would otherwise pay to file a lawsuit asserting the same claim(s) in court." (Id. at p. 8.) According to the affidavit of Nancy Harris, Defendant's current Director of Human Resources, Plaintiff signed the Arbitration Agreement on January 5, 2015, and the document remained in Plaintiff's personnel file since that time. (Id. at pp. 3–4.) Defendant submitted, and the Court has reviewed, a copy of the signed agreement, which was authenticated by Ms. Harris in her affidavit.[1] (Id. at pp. 6–9.)

Pursuant to her rights under the Agreement, Plaintiff filed discrimination, harassment, and retaliation-based charges with the EEOC on one or more occasions. (Doc. 10, p. 9.) She received a Notice of Right to Sue from the EEOC on July 3, 2018, (doc. 1-3, p. 13), and subsequently filed

---

[1] In determining the existence of an arbitration agreement, lower courts are to apply a "summary judgment-like standard" and the moving party must prove, through affidavit or other evidence, "the existence and terms of the arbitration agreement it seeks to enforce." Bazemore v. Jefferson Capital Systems, LLC, 827 F.3d 1325, 1332–33 (11th Cir. 2016); see, e.g., Burch v. P.J. Cheese, Inc., 861 F.3d 1338, 1342 n.3 (11th Cir. 2017) (quoting and relying on the arbitration agreement, which was provided and authenticated by defendant via an affidavit).

2

this action in the Superior Court of Chatham County on September 28, 2018, (doc. 1-1). She alleges that Defendant subjected her to ongoing sexual harassment, sex discrimination, and retaliation during her time as an employee. (Id. at p. 1.) Defendant removed the case to this Court on December 17, 2018 and filed its Motion to Dismiss and to Compel Arbitration four days later. (Doc. 1; doc. 4.) In its Motion, Defendant points to the Arbitration Agreement and argues that because Plaintiff's claims are "Covered Disputes," she is obligated to resolve them through arbitration. (Doc. 4-1, p. 5.) Specifically, Defendant contends that "Plaintiff is contractually bound to submit to arbitration as the exclusive forum for adjudication," and the Court should dismiss Plaintiff's claims against it and compel arbitration or, in the alternative, stay the case until arbitration is complete. (Id. at p. 2.) In response, Plaintiff does not dispute that she signed the Arbitration Agreement and does not challenge the Agreement's validity or enforceability. (Doc. 10; doc. 13)

## DISCUSSION

### I.    Jurisdiction

The Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1–16, generally governs the validity of an arbitration agreement. Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005). However, it is well-established that "the FAA does not confer subject matter jurisdiction on federal courts." Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1469 (11th Cir. 1997). Instead, some independent basis of subject matter jurisdiction is necessary. Id.

Here, Defendant asserts that the Court has federal question jurisdiction over this action. (Doc. 1.) Subject matter jurisdiction based on claims arising under federal law is grounded in 28 U.S.C. § 1331, which grants district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Such actions are removable under § 1441(a).

"Whether a claim arises under federal law for purposes of federal question jurisdiction is governed by the 'well-pleaded complaint' rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the complaint." Abele v. Tolbert, 130 F. App'x 342, 343 (11th Cir. 2005) (per curiam); see Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). All pleadings "must be construed so as to do justice." Fed. R. Civ. P. 8(e). That principle "applies with greatest force in cases filed by *pro se* litigants, whose filings are liberally construed." Torres v. Miami-Dade County, 734 F. App'x 688, 691 (11th Cir. 2018). "Liberal construction, in more concrete terms, means that federal courts must sometimes look beyond the labels used in a *pro se* party's complaint and focus on the content and substance of the allegations." Id.

In her Complaint, Plaintiff asserts that Defendant is liable for sex discrimination and retaliation, both in violation of "Georgia labor code." (Doc. 1-1, pp. 13–14.) She does not cite any federal law as grounds for recovery. (Id.) However, Plaintiff's Complaint contains repeated references to her dealings with the EEOC, and specifically notes that she had previously filed charges of "sex discrimination, sexual harassment, and retaliation." (Doc. 1-1, p. 14.) She further states that the EEOC gave her "the right to sue" and that "all conditions precedent to the bringing of this lawsuit have been satisfied and fulfilled." (Id. at p. 13.) Applying the lenient standards relevant to *pro se* pleadings, it is clear that Plaintiff intended to bring her claims pursuant to Title VII. The sexual harassment and retaliation claims asserted in her Complaint mirror those that she filed with the EEOC—a federal agency tasked with investigating potential violations of federal employment laws. See 42 U.S.C. §§ 2000e-(2)–(5). Additionally, her Complaint includes information routinely supplied by parties alleging violations of Title VII. For example, Plaintiff states that the sexual harassment she endured at work "was so severe that it affected a term, condition, or privilege of employment," and that after she filed harassment charges with the EEOC,

4

her manager retaliated "by trying to destroy her character" in the workplace. (Doc. 1-1, pp. 10–11, 13.) Both allegations mirror elements of Title VII claims. See Kidd v. Mando Am. Corp., 731 F.3d 1196, 1211 (11th Cir. 2013) (plaintiff asserting claim for retaliation must show that: (1) she engaged in statutorily protected activity; (2) she suffered materially adverse action; and (3) a causal connection between the protected activity and the adverse action); Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999) ("To establish a hostile-environment sexual-harassment claim under Title VII, an employee must show . . . the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment . . . ."). Plaintiff also notes that Defendant "continuously had at least 500 or more employees" at all relevant times, (doc. 1-1, p. 13), a fact relevant to the calculation of damages in federal employment discrimination actions. 42 U.S.C. § 1981(b)(3)(D). Further evincing her intent, Plaintiff's "Response to Defendant's Reply" explicitly states that "the case was filed with the court system due to [v]iolations of Title VII." (Doc. 13, p.1.)

Finally, although her Complaint references the "Georgia labor code," the Court is unaware of any state law in Georgia that would entitle Plaintiff to the relief she seeks. While a plaintiff may sue a state employer for such conduct, Georgia law does not contain a statutory basis for a sexual harassment or retaliation claim against a private employer. O.C.G.A. § 45-19-22 through § 45-19-29; see, e.g., Guilford v. MarketStar Corp., No. 1:08-CV-0336-CC-SSC, 2009 WL 10664954, at *9 (N.D. Ga. Jan. 30, 2009), *report and recommendation adopted*, No. 1:08-CV-0336-CC-SSC, 2009 WL 10664951 (N.D. Ga. Feb. 19, 2009) (noting that Georgia law does not provide state law remedy for employment discrimination against non-state employers). The Court must assume that Plaintiff did not intend to allege violations of a law that does not permit her to

5

recover. Because it is clear from the face of Plaintiff's Complaint that she intended to assert claims arising under federal law, the Court finds that it has federal question jurisdiction over this action.

**II.     Analysis**

Having determined that jurisdiction is proper, the Court must consider whether, under the FAA and the parties' Arbitration Agreement, Plaintiff is required to arbitrate her claims. The FAA was enacted in 1925 "as a response to judicial hostility [towards] arbitration . . . and seeks to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation." Walthour v. Chipio Windshield Repair, LLC, 745 F.3d 1326, 1329 (11th Cir. 2014) (citations and internal quotation marks omitted). The FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract. In line with these principles, courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citations and internal quotation marks omitted).

In relevant part, the FAA provides that a written agreement to arbitrate a controversy "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a party bound by an arbitration agreement refuses to arbitrate, the FAA permits the party aggrieved by such a refusal to petition a court of competent jurisdiction for an order directing the parties to proceed to arbitration. See id. at § 4. Before directing the parties to arbitration, however, the Court must be "satisfied that the making of the agreement for arbitration . . . is not in issue." Id. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986) (citation omitted).

Thus, the Court must first "determine whether the parties agreed to arbitrate that dispute." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). While courts utilize standard contract interpretation principles in this inquiry, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." Id. (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983)).

By its terms, the FAA generally applies to all contracts involving interstate commerce. 9 U.S.C. § 1–2. The Supreme Court of the United States has interpreted the FAA as applying "to contracts of employment except those involving 'transportation workers.'" Caley, 428 F.3d at 1367 (quoting Circuit City v. Adams, 532 U.S. 105, 119 (2001)). Here, the Arbitration Agreement is between an employee and an employer, and Plaintiff works in the service industry; thus, the FAA applies. According to the Eleventh Circuit Court of Appeals, the FAA mandates that a district court "either stay or dismiss a lawsuit" and "compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles and (b) the claims before the court fall within the scope of that agreement." Lambert v. Austin Ind., 544 F.3d 1192, 1195 (11th Cir. 2008) (internal quotation marks omitted) (citing 9 U.S.C. §§ 2–4). Accordingly, the Court must determine whether the Arbitration Agreement is an enforceable contract under Georgia law and, if so, whether Plaintiff's claims fall within its scope.[2] The Court addresses each issue in turn.

---

[2] The Agreement does not contain a choice-of-law provision for claims litigated outside of an arbitral forum. However, the Court finds that the application of Georgia law is appropriate as the Agreement was signed in and intended to be performed in Georgia. See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 59 (1995) ("[I]f a [] contract, without a choice-of-law provision, had been signed in New York and was to be performed in New York, presumably the laws of the State of New York would apply, even though the contract did not expressly so state.") (internal quotation marks omitted).

**A.      The Arbitration Agreement is an Enforceable Contract under Georgia Law**

The Court finds that the Arbitration Agreement is enforceable under Georgia contract law. In Georgia, "[a] definite offer and complete acceptance, for consideration, create a binding contract." Citizens Tr. Bank v. White, 618 S.E.2d 9, 11 (Ga. Ct. App. 2005); see O.C.G.A. § 13-3-1. Here, Defendant presented Plaintiff with the Arbitration Agreement during her new-hire process and her acceptance of the Agreement "was an express condition" of her employment with Defendant. (Doc. 4-2, pp. 4–5, 6–9.) The undisputed evidence indicates that Plaintiff signed the Agreement on January 5, 2015 and has continued to work for Defendant since that time. (Id. at p. 9; doc. 10, p. 1.) This exchange constituted a valid offer and acceptance. See Lambert, 544 F.3d at 1196 nn.5–6 (affirming district court's finding of offer and acceptance where employee received copy of arbitration policy, assent to policy was condition precedent to employment, and employee accepted employment); Caley, 428 F.3d at 1373–74 (contract considered an offer where language clearly manifested a willingness to enter into a bargain, and employees accepted offer through their continued employment); McBride v. Gamestop, Inc., No. 1:10-CV-2376-RWS, 2011 WL 578821, at *3 (N.D. Ga. Feb. 8, 2011) (employees' signatures on arbitration agreement indicated awareness of terms and therefore constituted acceptance).

The Arbitration Agreement is also supported by consideration. In Georgia, "mutual promises and obligations are sufficient consideration to support a contract." Caley, 428 F.3d at 1376 (citing Atlanta Six Flags P'ship v. Hughes, 381 S.E.2d 605, 607 (Ga. Ct. App. 1989)). Here, Plaintiff received reciprocal promises from Defendant to arbitrate and be bound by arbitration in "Covered Disputes." (Doc. 4-2, pp. 6–9.) Additionally, the Agreement provides that Defendant is responsible for the costs of arbitration. (Id.) These obligations suffice as consideration under

Georgia law. See Anderson v. Am. Gen. Ins., 688 F. App'x 667, 669 (11th Cir. 2017) (per curiam) ("[M]utual promises, such as a mutual promise to arbitrate, is sufficient consideration . . . .").

Finally, there is no evidence of unconscionability. According to the Supreme Court of Georgia, "[a]n unconscionable contract is 'such an agreement as no sane man not acting under delusion would make, and that no honest man would take advantage of.'" R.L. Kimsey Cotton Co. v. Ferguson, 214 S.E.2d 360, 363 (Ga. 1975) (quoting Hall v. Wingate, 126 S.E. 796, 796 (Ga. 1924)). The record before the Court does not contain any facts to support a finding that the Agreement is "so unreasonable and one-sided as to make it unconscionable," meaning unconscionability does not provide a basis to invalidate it. Id. Accordingly, the Court finds the Agreement to be a valid, enforceable agreement under Georgia law.

### B. Plaintiff's Claims Fall within the Scope of the Arbitration Agreement.

The Court also finds that Plaintiff's claims fall within the categories of claims covered by the Arbitration Agreement. (Doc. 4-2, pp. 6–18). The text of the Agreement provides that the parties agreed "to use final and binding arbitration to resolve any and all 'Covered Disputes' as defined in this [document]." (Id. at p. 6.) The Agreement then explains that "[a]ll claims, controversies, or other disputes between [Defendant] and [Plaintiff] that could otherwise be resolved by a court will be resolved exclusively through arbitration," including "claims for retaliation" and "claims for harassment or discrimination on the basis of" sex. (Id.) Plaintiff alleges that Defendant discriminated against her based on her sex and retaliated against her for filing complaints with the EEOC. (Doc. 1-1.) Thus, it is clear that Plaintiff's claims are "Covered Disputes" subject to arbitration.

Moreover, the fact that Plaintiff received a "right to sue" letter from the EEOC does not exempt her claims from compulsory arbitration pursuant to the Agreement. (See Doc. 4-2, p. 7.)

In her Response to Defendant's Motion, Plaintiff asserts that "[a]ll conditions precedent to the bringing of this lawsuit have been satisfied and fulfilled." (Doc. 10, p. 9.) However, the fact that the Agreement permitted Plaintiff to file charges with the EEOC does not undermine the Agreement's otherwise clear terms that require arbitration for the types of claims Plaintiff asserts in her Complaint. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 28 (1991) ("An individual [] claimant subject to an arbitration agreement will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action."). "Receiving a Notice of Right to Sue [letter] does not allow Plaintiff to avoid a prior arbitration agreement." Pryor v. Tenet N. Fulton Reg'l Hosp., No. 1:10-CV-1097-WSD, 2010 WL 11598095, at *3 (N.D. Ga. June 22, 2010) (citing Lyman v. Mor Furniture for Less, Inc., No. 3:06-CV-0666-ECR, 2007 WL 2300683, 2007 LEXIS 58187 (D. Nev. Aug. 7, 2007)); see also Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir. 2000) (a defendant's participation in EEOC proceedings does not constitute a waiver of any arbitration agreement).

The Court concludes that Plaintiff and Defendant entered into a valid, written agreement to arbitrate all of Plaintiff's claims. Thus, the Court must compel arbitration and either "stay or dismiss" this action. See Lambert, 544 F.3d at 1195. The Eleventh Circuit has indicated that dismissal is appropriate where all the underlying claims are subject to mandatory arbitration. See Caley v. Gulfstream Aerospace Corp., 333 F. Supp. 2d 1367, 1379 (N.D. Ga. 2004), aff'd, 428 F.3d 1359 (11th Cir. 2005) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."). Because all of Plaintiff's claims are subject to arbitration, the Court exercises its discretion and **GRANTS** Defendant's Motion to Dismiss and Compel Arbitration.[3] (Doc. 4.)

---

[3] In her Sur Reply, Plaintiff expressed concerns about the arbitration process. Specifically, Plaintiff requested a neutral arbitrator and that Defendant comply with their contractual obligation to cover the

**CONCLUSION**

For the reasons set forth above, the Court **GRANTS** Defendant CEC Entertainment, Inc.'s Motion to Dismiss and to Compel Arbitration, (doc. 4), **ORDERS** the parties to submit the underlying dispute to arbitration, and **DISMISSES** Plaintiff's Complaint **without prejudice**. The Court **DIRECTS** the Clerk of Court to enter the appropriate judgment of dismissal and to **CLOSE** this case.

**SO ORDERED**, this 24th day of May, 2019.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

administrative fees and expenses in their entirety. (Doc. 10, p. 10.) Defendant conceded that the Agreement provides for both of Plaintiff's requests. (Doc. 12.) Throughout this Order, the Court stressed that Plaintiff must abide by the terms of the Agreement; accordingly, Defendant is expected to do the same.